STATE of Missouri ex rel. Robert
J. CONNERS, Relator,

v.

Sara J. MILLER and Honorable Cary
Augustine, Respondents.

No. WD 65748.

Missouri Court of Appeals,
Western District.

June 30, 2006.

Elton W. Fay, Esq., Columbia, MO, for Relator.

Mary H. Moore, Esq., Columbia, MO, for Respondents.

Before: LOWENSTEIN, P.J., BRECKENRIDGE and HOWARD, JJ.

ORIGINAL PROCEEDING IN PROHIBITION

HAROLD L. LOWENSTEIN, Judge.

Relator Robert J. Conners filed a petition for a writ of prohibition in this court, seeking to prohibit Respondent, the Honorable Cary Augustine from enforcing an order requiring Conners to submit to genetic testing to determine the paternity of C.E.M. Conners claims the issue of the child's paternity was previously litigated in a Decree of Dissolution entered on August 8, 1995. In the decree, the dissolution court found that Connors was not the father of C.E.M. Relying on the doctrine of collateral estoppel, Connors argues Respondent lacks the subject matter jurisdiction to order him to submit to genetic testing to determine the paternity of C.E.M. This court issued a preliminary writ granting the stay.

"The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Section 240.841.1. Because the State was in privity with Lawrence at the time of the dissolution, the State is now collaterally estopped from re-litigating the issue of paternity. The request for permanent writ of prohibition is granted.

FACTUAL AND PROCEDURAL BACKGROUND

Robert Conners and Kimberly Lawrence were married on November 25, 1992. The parties separated on June 2, 1994 and Lawrence filed for dissolution on March 24, 1995. C.E.M. was born on June 7, 1995. A father was not listed on the birth certificate. Lawrence applied for state assistance for the minor child on June 12, 1995 through the Family Support Division. At the dissolution hearing, C.E.M. was represented by a guardian ad litem. Conners and Lawrence testified that while they had engaged in sexual intercourse during the separation, the two did not engage in intercourse around the time of conception. Both testified that Conners was not the father of C.E.M. Lawrence named another man as father of the child. No blood tests were drawn. Lawrence testified that she was receiving aid from the state for her daughter C.E.M. The trial court did not join the putative father or the state of Missouri as parties in the action.

The trial court issued its judgment of dissolution on August 8, 1995. In the judgment, the trial court found that there were no children born of the marriage, specifically finding "[Robert Conners] is not the natural father of [C.E.M.]."

On June 14, 2002, the Missouri Division of Child Support Enforcement served Conners with a petition for declaration of paternity for an order of support and judgment on a state debt in relation to C.E.M. The petition set forth three different

counts: (1) Petition by the State of Missouri, Family Support Division–Child Support Enforcement, and the Department of Social Services; (2) Petition by the State of Missouri and C.E.M. by Next Friend; and (3) Petition by State of Missouri based upon the assigned rights of Kimberly Lawrence.

### DISCUSSION

 "Prohibition will lie only to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856–57 (Mo. banc 2001). The petitioning party has the burden to show that the trial court exceeded its jurisdiction. *State ex rel. Heidelberg v. Holden*, 98 S.W.3d 116, 117 (Mo.App. S.D. 2003). The court's review is limited to the record below. *Id.*

 A dismissal for lack of subject matter jurisdiction is proper whenever it appears, by a preponderance of the evidence, that the court is without jurisdiction. *Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003).

 A finding of paternity in a dissolution is *res judicata* on the issue of paternity in subsequent proceedings between the former spouses. *Miller v. Hubbert*, 804 S.W.2d 819, 820 (Mo.App.1991). The doctrine of collateral estoppel precludes the same parties from re-litigating the same issues judicially determined in a previous action. *Fischer v. Fischer*, 34 S.W.3d 263, 265 (Mo.App.2000). The Missouri Supreme Court in *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 719 (Mo. banc 1979), created four factors to determine whether collateral estoppel is appropriate: (1) the issue decided in the first action

must be identical to the issue in the second action; (2) the prior litigation must have resulted in a final judgment on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication; and (4) that party must have had a full and fair opportunity to litigate the issue in the prior suit. *Id.* Only the third and fourth elements are at issue here.

> Whether parties are in privity for collateral estoppel purposes depends mostly on their relationship to the subject matter of the litigation. A privy, within the doctrine of collateral estoppel, means one so related by identity of interest with the party to the judgment that such party represented the same legal right. Persons are in privity for collateral estoppel purposes when the interests of the nonparty are so closely related to the interest of the party that the nonparty can fairly be considered to have had his day in court on the issue of which the collateral estoppel is applied.

*Land Clearance for Redevelopment Auth. of City of St. Louis v. U.S. Steel*, 911 S.W.2d 685 (Mo.App.1995).

 Here, the State was clearly in privity with Lawrence. Pursuant to Sections 208.055 and 454.410,[1] Lawrence assigned her rights to the Family Services Division when she requested state assistance on June 12, 1995. The marriage was dissolved on July 8, 1995. The interests of the nonparty essentially *became* the interest of Lawrence on the day she requested state assistance, meeting the requirement of privity.

Finally, Conners and Lawrence were given a full and fair opportunity to litigate the issue. At the dissolution hearing, the child was represented by a guardian ad litem, and both Conners and Lawrence

**1.** References to statutes are to RSMo. (2000) unless otherwise indicated.

testified that Conners was not the father of the child. There is a question as to whether the trial court was required to join the alleged putative father and the State as parties to the dissolution, pursuant to the Uniform Parentage Act.[2]

■ The issue of paternity as to C.E.M. was adjudicated in the dissolution proceeding to the extent that the trial court determined that Conners was not C.E.M.'s father. When paternity is "contested" in a dissolution proceeding, then the provisions of the UPA are implicated. *Fry v. Fry*, 108 S.W.3d 132, 136–37 (Mo.App.2003). Prior Missouri cases, which have held that the UPA was implicated because paternity was contested in a dissolution proceeding, involved a husband asserting he was not the biological father and the wife asserting that the husband was the biological father, or vice versa. See *Id. Piel v. Piel*, 918 S.W.2d 373, 375 (Mo.App.1996). The facts of this case are not those of the typical dissolution case where paternity is contested between the husband and wife. Here, Conners and Lawrence agreed that Conners was not C.E.M.'s father, so the issue of paternity was not a contested issue for them.

Nevertheless, Conners and Lawrence's agreement that C.E.M.'s presumed father was not her biological father was contrary to the interest of C.E.M. This was recognized by Conners, Lawrence, and the trial court because a guardian ad litem was appointed to protect C.E.M.'s interests in the proceeding. Therefore, the issue of Conners' paternity of C.E.M. was a "contested" issue in the dissolution proceeding and the provision of the UPA should have been followed. *Fry*, 108 S.W.3d at 136–37.

■ Under the UPA, Conners, Lawrence, C.E.M., and any putative father of C.E.M. were necessary parties. Section 210.830. No putative father was joined as a party. The question, then, is whether the failure to join a putative father was merely reversible error, which was waived since not raised in an appeal, or whether it deprived the trial court of jurisdiction to adjudicate the issue of C.E.M.'s paternity. In determining whether a putative father was an indispensable party, Rule 52.04(b) sets out factors to give guidance. Rule 52.04(b) provides that:

> If a person as described in Rule 52.04(a)(1) or Rule 52.04(a)(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: (i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

As between the parties in the underlying suit, Conners, Lawrence, and C.E.M., the absence of the putative father did not prejudice the putative father's interests. And any prejudice to those who were parties occurred not because the trial court exercised jurisdiction and adjudicated the issue of Conners' paternity, but because the final determination that Conners was not C.E.M.'s biological father appears questionable. That is not a prejudice due to the failure to join the putative father, but a

---

prejudice due to the guardian ad litem's failure to protect C.E.M.'s interest by requiring genetic testing of Conners and C.E.M. Likewise, none of the other factors in Rule 52.04(b) warrant finding the putative father to be an indispensable party. Therefore, the failure to join C.E.M.'s putative father as a necessary party was waived by C.E.M. *C & M Developers, Inc. v. Berbiglia, Inc.* 585 S.W.2d 176, 182 (Mo. App.1979). Because the putative father was not an indispensable party, that error did not deprive the trial court of jurisdiction and, thus, the judgment is not void. *Edmunds v. Sigma Chapter of Alpha Kappa,* 87 S.W.3d 21, 27 (Mo.App.2002). *Res judicata* applies because the issue of Conners' paternity was fully adjudicated in the dissolution action.

The writ of prohibition is made absolute.

All concur.